## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )
                                     )        Case No. 19-CR-20-JED
v.                                   )
                                     )
RAYTJUAN LAQUAI EDWARDS,             )
                                     )
            Defendant.               )

## OPINION AND ORDER

### I.    Background

The defendant, Raytjuan Laquai Edwards, is charged in a three-count Second Superseding Indictment (Doc. 31). Count One charges that, from October 16, 2018 to November 27, 2018, having been previously convicted of felonies, the defendant possessed a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Two charges that, on November 27, 2018, in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2), the defendant possessed a firearm and ammunition while subject to a Tulsa County protective order prohibiting use or threatened use of physical force against his girlfriend (Brianna Vaughn) and her child. Count Three charges that, on April 28, 2019, the defendant knowingly used corrupt persuasion and misleading conduct toward Ms. Vaughn and attempted to do so, by encouraging her not to come to court and that he did so with the intent of preventing her testimony in an official proceeding, in violation of 18 U.S.C. § 1512(b)(1).

The defendant has filed four motions which are now before the Court (Doc. 24, 25, 26, 29), and the government has filed responses (Doc. 37, 38, 39, 40). The Court heard arguments on the motions on July 3, 2019.

## II.    The Motions

### A.    Defendant's Motion to Compel Election (Doc. 24)

The defendant argues that Counts 1 and 2 are multiplicitous because both counts are premised upon the same alleged conduct: possession of the same firearm and ammunition. In response, the government argues that the counts are not multiplicitous because they involve different dates and violations of different provisions of § 922(g): Count 1 charges unlawful possession of a firearm and ammunition from October 16 to November 27 after felony convictions; and Count 2 charges that the defendant unlawfully possessed the weapon and ammunition on November 27, 2018 after a protective order was entered on November 5, 2018. In the alternative, the government argues that, if the counts are multiplicitous, the Court should exercise its discretion to submit evidence on both counts to the jury. If the jury convicts the defendant on both counts, the Court can require the dismissal of one count and sentence on the other.

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997) (citing *United States v. Morehead*, 959 F.2d 1489, 1505 (10th Cir. 1992)). "While multiplicity is not fatal to an indictment, . . . it poses the threat of multiple sentences for the same offense and may improperly suggest to the jury that the defendant has committed more than one

crime." *Id.* (quoting *Morehead*, 959 F.2d at 1505). "The threat of multiple sentences for the same offense raises double jeopardy concerns." *Id.*

Under similar circumstances as presented here, courts have determined that multiple indictment counts for possession of the same firearm are multiplicitous. *See, e.g., id.* at 1426 (determining two counts were multiplicitous where one charged under § 922(g)(1) and the other charged under § 922(g)(3) for possession of the same firearm). One unpublished Tenth Circuit decision appears to be on point here. In *United States v. Hooks*, 33 F. App'x 371 (10th Cir. 2002) (unpublished), the defendant was arrested after his girlfriend called the police. She had previously obtained a protective order against the defendant. The defendant possessed a firearm when arrested, and the government charged him with one count of violating § 922(g)(1) and one count of violating § 922(g)(8), with both counts based upon the defendant's possession of the same firearm. The defendant was convicted and sentenced on both counts. The Tenth Circuit determined that the convictions and sentences on both counts violated double jeopardy. 33 F. App'x at *1-2. In arriving at that conclusion, the court cited *Johnson* for the proposition that the court had "previously held that an individual's double jeopardy rights are violated when he is convicted of multiple violations of § 922(g) where only one firearm is involved." *Id.* at 1.

Based on the above, Counts One and Two in this case are multiplicitous and convictions and sentences on both counts would implicate double jeopardy. However, "[a] decision of whether to require the prosecution to elect between multiplicitous counts before trial is within the discretion of the trial court." *Johnson*, 130 F.3d at 1426. Where there is a possibility that a jury may find a defendant guilty on one count but not on another count,

a district court does not abuse its discretion in denying a defendant's pretrial request to require the government to elect to proceed on only one count. *Id.*; *see also United States v. Harwell*, 426 F. Supp. 2d 1189, 1192 (D. Kan. 2006) (declining to require the government to elect between two counts prior to trial); *United States v. Williams*, No. 10-CR-76-CVE, 2010 WL 3219994, *1-2 (N.D. Okla. Aug. 12, 2010) (unpublished) (declining to require the government to elect between counts charging two separate violations – one under § 922(g)(1) and another under § 922(g)(9) for possession of the same firearm).

Accordingly, the defendant's Motion to Compel Election (Doc. 24) is **denied**. Trial may proceed on both of the firearm counts. As the government alternatively argues, the Court may require the dismissal of one of the counts after trial if the defendant is found guilty on both firearm counts, such that the defendant will not suffer two convictions or sentences on multiplicitous counts.

### B.     Defendant's Motion in Limine (Doc. 25)

The defendant moves for a pretrial order excluding evidence of "allegations of domestic assault and battery, kidnapping, and lying to the police" and "[p]hotographs of illegal drugs and references in text messages to drugs, drug sales, or drug usage." (Doc. 25 at 1). The defendant argues that admission of such evidence would violate his rights because the jury should not hear about any criminal conduct other than that charged in the indictment.

The government responds that it does not intend to introduce evidence of drug sales or drug dealing. Accordingly, the defendant's motion in limine on that point is considered moot.[1]

The government argues that evidence that the defendant assaulted Ms. Vaughn and threatened her with a firearm is relevant to proving the defendant knowingly possessed the firearm. According to the government, evidence that Ms. Vaughn thereafter obtained a protective order for herself and her son is directly relevant to Count Two, which charges that the defendant possessed a firearm after the entry of the protective order. The government further argues that all of the foregoing evidence relating to the alleged assault, kidnapping, and threatening with a weapon are relevant evidence to establish Count Three, which charges that the defendant attempted to corruptly persuade Ms. Vaughn from testifying against the defendant in an official proceeding. The government also contends that the evidence is admissible under Fed. R. Evid. 404(b)(2), as evidence that proves the defendant's knowledge and absence of mistake.

To establish Count One, the government must prove that (1) the defendant knowingly possessed a firearm or ammunition, (2) he was convicted of a felony before he possessed the firearm, (3) he knew that he had been convicted of a felony, and (4) before the defendant possessed the firearm or ammunition, it had moved in interstate commerce. *See* 18 U.S.C. § 922(g)(1); *see also generally Rehaif v. United States*, __ S. Ct. __, 2019 WL 2552487, *7 (June 21, 2019) ("in a prosecution under 18 U.S.C. § 922(g) and §

---

[1] The government shall not reference or introduce any evidence at trial referencing drugs absent further order of the Court.

924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm").

To establish Count Two, the government must prove that (1) the defendant knowingly possessed a firearm or ammunition, (2) before he possessed the firearm or ammunition, the defendant was subject to a court order that was issued after a hearing of which defendant had actual notice and at which he had an opportunity to participate, (3) the order restrained the defendant from harassing, stalking, or threatening an intimate partner or a child of such partner, or engaging in other conduct that would place the partner in reasonable fear of bodily injury to the partner or child, (4) the order included a finding that the defendant represented a credible threat to the physical safety of such intimate partner or child or by its terms explicitly prohibited the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury, (5) the defendant knew of his status (e.g. that he was subject to a court order as described in the following elements), and (6) before the defendant possessed the firearm or ammunition, it had moved in interstate commerce. *See* 18 U.S.C. § 922(g)(8); *Rehaif*, 2019 WL 2552487, *7.

To establish witness tampering under Count Three, the government must prove that (1) the defendant used or attempted to use corrupt persuasion or misleading conduct against Ms. Vaughn; and (2) he acted knowingly and with the intent to prevent the testimony of Ms. Vaughn with respect to an official proceeding. *See* 18 U.S.C. § 1512(b)(1).

Evidence of the defendant's intimate relationship with Ms. Vaughn, her alleged knowledge of his possession of firearms, and the allegation that he threatened her with a firearm appears relevant to proving the defendant's knowing possession of a firearm for purposes of Counts One and Two. Count Two also includes elements relating to a protective order as to an "intimate partner" or a child of the intimate partner, rendering general information about the relationship relevant. That evidence, as well as evidence about the existence of the protective order proceedings, is also relevant to proving the defendant's knowledge and intent with respect to Count Two, which requires proof that the defendant was aware of the protective order proceedings, and to Count Three, which charges that the defendant attempted to prevent Ms. Vaughn from testifying against him in an official proceeding. During the hearing on the defendant's motions, defendant's counsel acknowledged that evidence of the pointing of a firearm at Ms. Vaughn is probative at least as to the firearm charges. At this time, the motion in limine (Doc. 25) is **denied in part**, as to such evidence.

However, the government's briefing contains other factual allegations that do not appear sufficiently relevant to the firearms charges. For example, testimony that Ms. Vaughn was pregnant or that the defendant beat and threatened her in front of her 11-year-old son are more prejudicial than probative and would present a real risk of inflaming the jury rather than proving any element of the crimes charged. Evidence of an alleged kidnapping is also unduly prejudicial, as the defendant is not charged in this Court with kidnapping. A history of alleged domestic abuse prior to the October 16, 2018 incident would also be more prejudicial than probative of the three counts charged in the indictment

in this case.  At this time, the Court finds that such evidence should be excluded from the trial under Fed. R. Evid. 403 and 404(b).  To that extent, the defendant's motion in limine (Doc. 25) is **granted in part**.

### C.    Defendant's Motion for a *Daubert* Hearing (Doc. 26)

The defendant requests a *Daubert* hearing with respect to the government's proposed interstate nexus expert, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent Lucas Keck, who is prepared to testify that the firearm and ammunition had at one time moved from state to state or from a foreign country prior to the defendant's possession of those items in Oklahoma.  According to the defendant, the Court should conduct a pretrial hearing pursuant to *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 (1993) to test the methodology used by Agent Keck.

The government argues that the Court need not hold a separate hearing to perform its gatekeeper role under *Daubert*.  The government also notes that many felon-in-possession cases involve the testimony of an agent who presents evidence regarding the interstate nexus component.

Federal Rules of Evidence 702 and 703 govern the admissibility of expert testimony. Pursuant to Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

The Supreme Court in *Daubert* suggested non-exhaustive factors to guide "trial courts in determining whether proposed expert testimony is based on reliable methods and principles: (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (citing *Daubert*, 509 U.S. at 593-94).  The inquiry is "flexible," "do[es] not constitute a 'definitive checklist or test,'" and the district court does not need to consider every factor. *Id.* at 989–90; *see Bitler v. A.O. Smith. Corp*., 400 F.3d 1227, 1233 (10th Cir. 2004) (The "list is neither definitive nor exhaustive and . . . a trial judge has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability.").

The court should make a preliminary finding whether the expert is qualified, by determining "if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his discipline.'" *Bitler*, 400 F.3d at 1232-33 (quoting *Daubert*, 509 U.S. at 592). The proponent of expert testimony must establish that the expert used reliable methods to reach his conclusion and that the expert's opinion is based on a relevant factual basis. *See id.* at 1233. "[A] trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Id.*

The Court has reviewed the defendant's motion, the government's response, and Agent Keck's Report of Investigation and Statement of Qualifications (Doc. 40-2). Based upon his Statement of Qualifications, Agent Keck has very substantial training and experience with firearms. He has received ATF Firearms Interstate Nexus Training, and he has handled and examined hundreds of firearms and multiple brands and calibers of ammunition. In connection with his work, he has access to the federal licensing information concerning United States manufacturers, importers and dealers of firearms, and those who are licensed to do business in Oklahoma. He also has access to firearm records that are required to be maintained under federal law by those who are licensed. He maintains regular contacts with federal firearm licensees regarding licensing application and firearm transfers. Before he was employed by the ATF, Keck was a Special Agent with the United States Secret Service for several years, where he trained with firearms, and he is a Lieutenant Colonel in the United States Marine Corps, where he has served for over 18 years on active and reserve duty. He served as an intelligence officer and an infantry

officer, which required him to learn, train, study, and employ firearms utilized by the Marine Corps. He has attended training courses on foreign weapons and ammunition, which included identification of foreign firearms. In addition to his formal firearms training and experience with the Marine Corps, the Secret Service, and the ATF, Agent Keck has been a firearms collector for over 25 years.

On January 24, 2019, Agent Keck examined the Forjas Taurus firearm that is at issue in this case. He identified it as a Forjas Taurus S.A., Model Protector Poly, .357 Magnum caliber revolver, bearing serial number HN86164, and he determined that the firearm was manufactured in Brazil. As a result, he concluded that the firearm was not manufactured in the State of Oklahoma, such that it has moved in interstate or foreign commerce. It is well-established that evidence that a firearm was manufactured outside the state in which it was possessed is sufficient proof that the possession was in or affected interstate commerce. *See United States v. Gourley*, 835 F.2d 249, 251-52 (10th Cir. 1987).

Based upon the foregoing, the Court makes a preliminary finding that Agent Keck appears qualified and his proffered testimony about the place of firearm and ammunition manufacture has a reliable basis in the knowledge and experience in his field. Numerous courts have permitted such testimony by law enforcement agents, typically ATF special agents, on the interstate nexus element. *See, e.g., id.; United States v. Gregg*, 803 F.2d 568, 572 (10th Cir. 1986); *United States v. Corey*, 207 F.3d 84, 90-92 (1st Cir. 2000); *United States v. Smith*, 153 F. App'x 187, 190 (4th Cir. 2005) (unpublished); *United States v. Gresham*, 118 F.3d 258, 266 (5th Cir. 1997) ("We have consistently stated . . . that 'proof of the interstate nexus to the firearm may be based upon expert testimony by a law

enforcement officer.'") (citation omitted); *United States v. Vasser*, 163 F. App'x 374, 376-77 (6th Cir. 2006) (unpublished); *United States v. Thornton*, 642 F.3d 599, 607-08 (7th Cir. 2011); *United States v. Maddix*, 96 F.3d 311, 315-16 (8th Cir. 1996); *United States v. Dunn*, 946 F.2d 615, 618 (9th Cir. 1991); *United States v. Floyd*, 281 F.3d 1346, 1349 (11th Cir. 2002).

As the court in *United States v. Brownlee*, 744 F.3d 479, 482-83 (7th Cir. 2014) explained: "It's no surprise that the use of expert testimony to prove that a gun has crossed state lines is the standard method of proof of that element of the crime of being a felon in possession – evidence accepted as valid by (so far as we have been able to determine) all courts." The agent in *Brownlee*, like Agent Keck here, had received training at the ATF's firearms nexus school in how to determine where guns had been manufactured. *See id.* at 481-82.

In light of the foregoing, the Court determines that a pretrial *Daubert* hearing is not necessary. "It is within the discretion of the trial court to determine *how* to perform its gatekeeping function under *Daubert*." *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019) (citation omitted). "A *Daubert* hearing is 'not specifically mandated' and a judge may fulfill his gatekeeper obligation when asked to rule 'on an objection during trial . . . so long as the court has sufficient evidence to perform the task' of ensuring reliability and relevance." *Id.* (citation omitted). Accordingly, any objection regarding reliability can be addressed at the time of trial. *See id.* The defendant's request for a pretrial *Daubert* hearing (Doc. 26) is **denied**.

**D.      Defendant's Motion to Suppress (Doc. 29)**

The defendant moves to suppress the firearm that is the subject of Counts 1 and 2 of the indictment.  He asserts that the affidavit presented to obtain a Tulsa County search warrant on November 27, 2018 failed to establish probable cause, because the affidavit lacked a nexus between suspected criminal activity and the place that was searched. According to the defendant, the affidavit did not allege why a firearm might be found at the apartment occupied by the defendant.

In response, the government notes that the affidavit established that the defendant had used a gun in connection with assaulting Brianna Vaughn.  The gun sought in the search warrant was evidence of that crime.  Also, because the defendant is a convicted felon, his possession of the firearm was evidence of the crime of felon in possession.  In addition, the affidavit supported the inference that the defendant's gun would likely be found in his new apartment.  Finally, the government argues that, even if the affidavit were found to lack a sufficient nexus to the place searched, the officers relied in good faith on the warrant issued by Tulsa County and therefore the good faith exception would apply and the evidence should not be suppressed.

Pursuant to the Fourth Amendment to the United States Constitution, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend IV.  "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found

in a particular place." *United States v. Grubbs*, 547 U.S. 90, 95 (2006); *see Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is a "practical, nontechnical conception," which operates in conjunction with commonsense, "practical considerations of everyday life." *Id.* at 230. "[F]or a search to qualify as 'reasonable' within the meaning of the Fourth Amendment, [the court] must be able to discern some 'nexus' between the crime officers sought to investigate and [the place to be searched]." *United States v. Harris*, 735 F.3d 1187, 1190 (10th Cir. 2013). A "'sufficient nexus' is established by a search warrant when the materials supporting it describe 'circumstances which would warrant a person of reasonable caution [to believe] that the articles sought are at a particular place.'" *Id.* (quoting *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009)).

In determining the existence of probable cause, "magistrate judges may 'rely on the opinion' of law enforcement officers 'as to where contraband' or other evidence 'may be kept.'" *Biglow*, 562 F.3d at 1279 (citation omitted). Thus, "the 'additional evidence' linking an individual's suspected illegal activity to his home has thus come in the form of an affiant officer's statement that certain evidence – in his or her professional experience – is likely to be found in a defendant's residence." *Id.* The "affiant officer need not draw an explicit connection between a suspect's activities and his residence for a Fourth Amendment nexus to exist." *Id.* at 1280.

"[M]agistrate judges may draw their own reasonable conclusions, based on the Government's affidavit and the 'practical considerations of everyday life,' as to the likelihood that certain evidence will be found at a particular place." *Anthony v. United States*, 667 F.2d 870, 874 (10th Cir. 1981). Accordingly, "the nexus between the place to

be searched and the evidence sought may be established through normal inferences about the location of evidence." *United States v. Tisdale*, 248 F.3d 964, 971 (10th Cir. 2001). "Allowing such inference to establish a Fourth Amendment nexus is appropriate because probable cause is a matter of 'probabilities and common sense conclusions, not certainties." *Biglow*, 562 F.3d at 1280 (quoting *United States v. Orr*, 864 F.2d 1505, 1508 (10th Cir. 1988)).

The Affidavit for Search Warrant (Doc. 29-2) provides a sufficient nexus to support probable cause in this case. The affidavit was executed on November 19, 2018 by Officer Mike Cawiezell of the Tulsa Police Department's Special Investigations Division. (*See id*.) The affidavit specifically describes the premises to be searched, the items sought (firearms, ammunition, magazines, and residency paperwork), and the crime being investigated (possession of a firearm after conviction of a felony). (*Id.*). To establish probable cause for the search, Officer Cawiezell (1) provided details as to allegations that the defendant had threatened Ms. Vaughn with a gun on April 23, 2017 and October 17, 2018 and threatened to shoot up a house on November 5, 2018, (2) noted that the defendant is a convicted felon, (3) stated that Ms. Vaughn informed Cawiezell that "Edwards is now living at [the specific apartment to be searched]," and (4) indicated his belief that, based on those facts, the defendant illegally possessed a firearm at the new residence to be searched. (*Id.*).

The facts set forth in the Affidavit for Search Warrant established a direct nexus between the defendant, his possession of a firearm, and the specific place to be searched,

which was an apartment to which the defendant had recently moved. The defendant's motion to suppress (Doc. 29) is accordingly **denied**.

## III. Conclusion

For the foregoing reasons, the defendant's motions to compel election of counts (Doc. 24), for *Daubert* hearing (Doc. 26), and to suppress (Doc. 29) are **denied**, and his motion in limine (Doc. 25) is **granted in part and denied in part** as set forth above.

SO ORDERED this 8th day of July, 2019.

_____
JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT